UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LAURA BERGMAN,

                         Plaintiff,

    -against-

KIDS BY THE BUNCH TOO, LTD., KIDS BY
THE BUNCH, LTD., BETH TURMAN; and
JONATHAN TURMAN,

                         Defendants.
-----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
14-CV-5005 (DRH)(SIL)

**LOCKE, Magistrate Judge:**

Presently before the Court, on referral from the Honorable Denis R. Hurley for

Report and Recommendation, is Defendants' Kids By the Bunch Too, Ltd. ("KBTBT"),

Kids By the Bunch Ltd. ("KBTB"), (together, "Corporate Defendants"), Beth Turman,

and Jonathan Turman (together, the "Individual Defendants" and all four

collectively, "Defendants") motion to vacate the default judgment. *See* Docket Entry

("DE") [38].  By way of Complaint filed August 22, 2014, Plaintiff Laura Bergman

("Bergman" or "Plaintiff") commenced this employment discrimination, wage and

hour, and medical leave action alleging: (i) disability discrimination in violation of

the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") and

the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYHRL"); (ii)

failure to accommodate in violation of the ADA and NYHRL; (iii) unpaid

compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

("FLSA") and New York Labor Law, N.Y. Lab. Law § 650 *et seq.* ("NYLL"); (iv)

retaliation in violation of the FLSA, NYLL, and Family and Medical Leave Act, 29

U.S.C. § 2601 *et seq.* ("FMLA"); and (v) interference in violation of the FMLA.  *See* DE [1].  After Defendants failed to answer or otherwise respond, the Clerk of Court entered default against them on November 24, 2014.  *See* DE [17].  Almost a year later, Plaintiff filed a motion for a default judgment, which, on September 22, 2016, Judge Hurley granted.  *See* DE [25].  Approximately six months later, Defendants filed the instant motion to vacate the default judgment, *see* DE [38], which Judge Hurley referred to this Court for Report and Recommendation.  *See* Referral Order dated April 4, 2017.  For the reasons set forth herein, the Court respectfully recommends that Defendants' motion to vacate the default judgment be granted.

## I.    Background

The Court provides a summary of facts relevant only to Defendants' motion to vacate the default judgment.[1]  Plaintiff is a former employee of KBTBT, a company based in Syosset, New York.  *See* Affidavit of Laura Bergman ("Bergman Aff."), DE [45-1], Ex. 1, ¶ 2.  She was hired on April 21, 2009 as an Assistant Director.  *Id.*; Compl. ¶ 14.  Although hired as an employee of KBTBT, Plaintiff regularly worked for KBTB, a similar corporate entity based in Glen Cove, New York.  Compl. ¶ 15. The two companies have the same management, perform the same services, and share the same staff.  Bergman Aff. ¶ 5.  Together, Bergman alleges that they employ over 50 employees.  *Id.*  Beth Turman is the Chief Executive Officer of KBTBT, and Jonathan Turman—her husband—is the Chief Executive Officer of KBTB.

---

[1] A more thorough discussion of the facts is available in this Court's previous Report and Recommendation.  *See Bergman v. Kids By the Bunch Too, Ltd.*, No. 14-cv-5005, 2016 WL 4991549 (E.D.N.Y. May 10, 2016), *Report and Recommendation adopted*, No. 14-CV-5005, 2016 WL 4991540 (E.D.N.Y. Sept. 16, 2016).

*See* Compl. ¶ 16.  Plaintiff reported directly to both Beth and Jonathan Turman.  *Id.*
In April 2013, Plaintiff requested a three-month medical leave of absence from Beth
Turman.  *Id.* at ¶ 20.  That request was granted.  *Id.*  On September 19, 2013, Plaintiff
received an e-mail from Jonathan Turman stating that she was being terminated for
failure to remain in contact with Defendants while she was out.  *Id.* at ¶ 26.

As a result of the above, Plaintiff commenced this action on August 22, 2014.
*See* DE [1].  On September 5, 2014, Plaintiff filed returns of service.  *See* DE [11, 12,
13, 14].  After Defendants failed to answer or otherwise respond, the Clerk of Court
entered default against them on November 24, 2014.  *See* DE [17].  Almost a year
later, Bergman filed a motion for a default judgment, which, on September 22, 2016,
Judge Hurley granted.  *See* DE [25].  Approximately six months later, Defendants
filed the instant motion to vacate the default judgment arguing insufficient service of
process and excusable neglect.  *See* DE [38].  Approximately a week later, Judge
Hurley referred the motion to this Court for Report and Recommendation as to
whether it should be granted.  *See* Referral Order dated April 4, 2017.

On January 9, 2018, the Court conducted an evidentiary hearing which
addressed, *inter alia*, the issue of service of process and underlying facts surrounding
Defendants' default.  *See* DE [51].  At the hearing, Larry Radler, the owner of Court
Support Process Servers, and Vincent Mannetta, a process server, testified as to the
methods of attempted service purportedly effectuated on Defendants.  *See generally*
Transcript of January 19, 2018 Evidentiary Hearing ("Hearing Tr."), DE [53-1].  At
the hearing, the testimony was somewhat confused because the wrong forms were

3

used to indicate whether each attempt at service was on an individual or a corporation.   Nevertheless, considering the testimony in its totality, the Court concludes that KBTBT was properly served when service was effectuated on the New York Secretary of State.[2]  See Hearing Tr. at 20:9-24:20; see also Kids By the Bunch Too, Ltd. Affidavit of Service, DE [53-6], Ex. 1; Secretary of State Affidavit of Service, DE [45-1], Ex. 4.  Further, on August 29, 2014, Beth Turman was effectively served with the Summons and Complaint when a copy was left with a person of suitable age and discretion, Tina Lauro, at the office of KBTBT, and another copy was mailed to her at the same address.  See Affidavit of Service, DE [45-1], Ex. 8.  Johnathan Turman was served with the Summons and Complaint when a copy was left with a person of suitable age and discretion, Kelly "Doe," at the premises of his place of business, KBTB, and another copy was mailed to him at the same address.[3]  See Hearing Tr. 44:17-48:7.

However, Jonathan and Beth Turman both testified that they never received copies of the Summons and Complaint, and therefore, did not receive notice of the instant action at that time.  See Hearing Tr. at 137:21-23; 177:21-25.  According to Beth Turman, the couple was out of the country on a Carnival cruise around August 2014, the time service was effected.  See Hearing Tr. at 145:20-146:7; see also Carnival Cruise Loyalty Program Printout, DE [53-1], Ex. J.  The couple allegedly first became aware of the instant action in August 2016, after Jonathan Turman conducted a

---

[2] Whether KBTB was served properly is not at issue because the parties agreed on the record that the judgment against KBTB is void due to KBTB filing for bankruptcy.  See DE [51].
[3] The Court notes that an individual named Kelly Basile was employed by KBTB at the relevant time.

google search of his name because he was planning to start a new business. *See* Hearing Tr. at 149:9-24.   The Individual Defendants also testified about other litigations they were involved in at or around the same time that this action was filed, and that they dealt with those actions in a timely fashion. *See* Hearing Tr. at 142:4-25, 174:1-25.   Specifically, they testified as to:  (i) two trademark infringement actions; (ii) a bankruptcy action; (iii) a personal injury action; and (iv) a court proceeding involving the Town of Muttontown, all of which they defended. *See id.* at 140:12-19; 142:1-25; 174:3-20.   Finally, the Individual Defendants testified that Plaintiff was not terminated in connection with her medical leave. *See id.* at 153:21-25; 154:1-14; 157:6-18; 158:6-11; 159:16-21; 160:10-12; 183:6-10.   To the contrary, the Individual Defendants claim that Bergman was terminated for, *inter alia*, failing to keep defendants informed about her status while on leave. *Id.* at 75:1-8.

## II.   Legal Standard

Federal Rule of Civil Procedure 55(c) permits litigants to petition the court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  Fed. R. Civ. P. 60(b) authorizes a court to relieve a party from a final judgment for the following reasons:

> (1)    mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Because a default judgment is "the most severe sanction which the court may apply," all doubts on a motion to vacate should be resolved in favor of the party seeking to vacate, so as to ensure that disputes are determined on the merits when possible. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).   On the other hand, default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary . . . [and] those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice." *Enron*, 10 F.3d at 96.   Since the trial court is in the best position to assess the individual circumstances of a given case, the disposition of motions for default or seeking entry of default is left to the sound discretion of a district court.   *See State St. Bank & Trust Co. V. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004); *see also Enron*, 10 F.3d at 95.   In considering a motion to vacate default judgment, a court must consider: "(1) the willfulness of default; (2) the existence of any meritorious defenses; and (3) prejudice to the non-defaulting party."   *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

## III.   Discussion

Defendants offer two arguments in support of their motion to vacate:  (i) that the default judgment is void because Plaintiff failed to effectuate proper service of process; and (ii) that the failure to respond to the Complaint was a result of "excusable neglect."  *See* Defendants' Memorandum of Law ("Defs.' Mem."), DE [40], at 4-20; Fed. R. Civ. P. 60(b)(1), (4).   The Court addresses each argument in turn.

6

A. Whether the Judge is Void—Service of Process

The Court finds that the default judgment is not void because Plaintiff effectuated proper service of process on Defendants. Rule 60(b)(4) provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . [if] the judgment is void." Fed. R. Civ. P. 60(b)(4). "A default judgment is 'void' if it is rendered by a court that lacks jurisdiction over the parties." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011). "For a federal court to exercise personal jurisdiction over a defendant, 'the plaintiff's service of process upon the defendant must have been procedurally proper.'" *Westchase Residential Assets II, LLC v. Gupta*, No. 14-cv-1435, 2016 WL 3688437, at *2 (E.D.N.Y. July 7, 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)); *see also Sartor v. Toussaint*, 70 Fed.App'x. 11, 13 (2d Cir. 2003) ("A judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected."). "[W]hen a judgment entered against the defaulting party is void, the Court has no discretion and is compelled to grant the motion for the reason that a void judgment cannot be enforced." *Sartor*, 70 Fed.App'x. at 13 (quoting *Wrobleski v. Morrissette*, No. 96-cv-0182, 2000 WL 129184, at *1 (W.D.N.Y. Jan. 27, 2000)).

Under Rule 4(e), a plaintiff may serve an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with

7

someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(1), (2)(B). Thus, the Court looks to New York Civil Practice Law and Rules ("C.P.L.R.") which enumerate several ways by which proper service can be effectuated. Under C.P.L.R. 308, in addition to personal service, a plaintiff can serve an individual by a combination of delivery and mail. Section 308(2) provides that an individual may be served "by delivering the summons within the state to a person of suitable age and discretion at the [person's] actual place of business . . . and by either mailing the summons to the person to be served at his or her last known residence . . . or [ ] actual place of business . . . . " N.Y. C.P.L.R. § 308(2). "New York courts have construed 'actual place of business to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a 'clear identification of the work performed by [him] with that place of business.'" *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (quoting *King v. Galluzzo Equip. & Excavating, Inc.*, No. 00-CV-6247, 2001 WL 1402996, at *4 (E.D.N.Y. Nov. 8, 2001)).

Further, according to Rule 4, "[u]nless federal law provides otherwise or the defendant's waiver has been filed, a domestic . . . corporation . . . [can] be served . . . in a judicial district of the United States . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). Rule 4 also provides, however, that

service may be effected by "following state law . . [of] the state where the district court is located . . . ." Fed. R. Civ. P. 4 (e)(1). Thus, in this case, service under Rule 4 may also be deemed proper if Plaintiff has complied with New York law. Section 306 of the New York Business Corporation law provides that:

> service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made by personally delivering [all necessary documents] to ... the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany . . . Service of process on such corporation shall be complete when the secretary of state is so served.

N.Y. Bus. Corp. L. § 306(b)(1). Thus, a corporation registered to do business in New York may be served by proper service upon the Secretary of State of New York.

Applying the standards above, the record establishes that service on Defendants was proper. KBTBT was effectively served under Section 306 of the Business Corporation law when a copy of the Summons and Complaint was delivered to the New York Secretary of State. *See* Affidavit of Service, DE [45-1], Ex. 4. Further, Jonathan and Beth Turman were also properly served with the pleadings via copies left with a person of suitable age and discretion at their respective places of business followed by a copy mailed to each of their business addresses as required under CPLR 308(2). *See* Affidavits of Service, DE [45-1], Ex. 4, 6.

Defendants argue that service was improper relying on affidavits of service purporting to reflect service upon Beth Turman on August 29, 2014 because these affidavits: (1) reflects service on a corporation rather than an individual; (2) do not state that the mailing requirement was satisfied; and (3) do not indicate her military

status. See Defs.' Mem. at 3-6.  The Court finds that this argument elevates form over substance.  In fact, to give Defendants' position credence, the Court would have to conclude that the service upon Beth Turman was a duplicate effort to serve KBTBT while no effort was made to serve Ms. Turman at all.  Such a conclusion would be illogical, especially since after a copy of the Summons and Complaint was left with a person of suitable age and discretion at Beth Turman's place of business, and a second copy was then mailed to her, which is exactly what is required to serve an individual under New York law.  Therefore, the Court concludes that Bergman properly served Beth Turman despite the process server's use of the wrong affidavit form.

Defendants also argue that Jonathan Turman was improperly served on the basis that Kelly Basile, an employee of KBTB, does not recall whether she received any legal papers concerning Plaintiff during her employment.  *See* Defs' Mem. at 5. According to Bergman, a copy of the Summons and Complaint was delivered to an individual named "Kelly Doe" at the business address of KBTB followed by a copy being mailed, and at that time, Kelly Basile was a KBTB employee with that first name.  *See* Affidavit of Service, DE [45-1], Ex. 5; *see* Hearing Tr. at 144:21-23.  Under the circumstances, Kelly Basile's unclear recollection is insufficient to rebut the documentary proof set forth in the affidavit of service.  *See Lincoln First Bank-Cent., N. A. v. Joe Bombard Chevrolet, Inc.,* 55 A.D.2d 1048, 1049, 391 N.Y.S.2d 927, 928 (4th Dep't 1977) (holding that an individual's personal recollection is insufficient to rebut documentary evidence kept in the regular course of business).  Accordingly, the Court finds that Plaintiff has sufficiently established proper service of process on

10

Jonathan Turman and the default judgment is not void on this basis as to KBTB, Beth Turman, or Jonathan Turman.

B.  <u>Excusable Neglect</u>

The Court next turns to whether Defendants are entitled to relief under Rules 55(c) and 60(b)(1) due to excusable neglect.  "When a district court decides a motion to vacate a default judgment [ . . . ], the court's determination must be guided by three principal factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir. 2004) (internal quotation marks omitted).  Of these factors, willfulness carries the most weight. Though each factor is to be considered, a "default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991).

i.  *Willful Default*

The Court finds that Defendants' conduct was not willful.  "A default is willful when the conduct is 'more than merely negligent or careless,' but is instead 'egregious and not satisfactorily explained.'" *Jaramillo v. Vega*, 675 Fed. App'x. 76, 76–77 (2d Cir. 2017) (quoting *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015)).  Initially, the court must determine whether the defendant's default is willful, that is, that the defendant "deliberately chose not to appear." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001).  A finding of willfulness requires a showing that the

defaulting party engaged in deliberate or egregious conduct. *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Further, "when there is a factual dispute regarding willfulness, the court should resolve it in favor of the party moving to set aside the default." *Pennacchio v. Powers*, No. 05-CV-985, 2010 WL 3767141, at *4 (E.D.N.Y. Aug. 9, 2010); *see also Flanagan v. Modern Concrete Corp.*, No. 07-CV-499, 2008 WL 2559377, at *3 (E.D.N.Y. June 23, 2008) ("Under the lenient standard of Rule 55(c), the Court must resolve any doubt about defendants' willfulness in favor of the defendants.").

Here, Defendants have satisfied their burden in establishing that their conduct was not willful. Specifically, the Individual Defendants testified credibly that, at the time of the service of process, they were out of the country on a cruise, and upon their return they were not notified by their respective employees of any pleadings received in their absence. *See* Hearing Tr. at 72:4-10; 145:20-23; 148:4-7; 175:18-22; 176:5-8. According to the Individual Defendants, they first became aware of the instant action after Jonathan Turman conducted a google search of his name in August 2016, which he did because he was looking into starting a new business venture. *See*, *e.g.*, Hearing Tr. at 149:7-150:4. Aiding their argument, Defendants were actively engaged and timely responded to other litigation in or around the same period that they were purportedly served in this action, indicating that their aim was not to avoid litigation or its consequences. *See* Hearing Tr. at 142:1-25; 174:3-20. Based on the foregoing, Defendants adequately explain the circumstances that led to their failure to respond to the Complaint, and the Court concludes that this failure amounts to nothing more

than negligence, the result of not learning of the lawsuit from their employees. Accordingly, the Court concludes that Defendants did not act willfully in failing to respond to Plaintiff's Complaint.

      *ii.*   *Meritorious Defense*

The Court next turns to the issue of whether Defendants have presented a meritorious defense.  With respect to the existence of meritorious defenses, "the defendant 'need not conclusively establish the validity of the defense(s) asserted' but need only present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *Schlatter v. China Precision Steel, Inc.*, 296 F.R.D. 258, 261 (S.D.N.Y. 2013) (quoting *Davis*, 713 F.2d at 916).  However, "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.*, 10 F.3d at 98.  Nevertheless, establishing a meritorious defense "is not a stringent burden." *U.S. Commodity Futures Trading Comm'n v. Musorofiti*, No. 05-CV-3917, 2007 WL 2089388, at *4 (E.D.N.Y. July 17, 2007).

### 1.  Disability Discrimination under the ADA and NYHRL

Initially, Plaintiff alleges that Defendants discriminated against her based on her alleged disability in violation of the ADA and the NYHRL.  *See* Compl. ¶¶ 30, 41. In the Second Circuit, claims of disability discrimination under the ADA and NYHRL require the same elements to establish a *prima facie* case.  *See Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184, n.3 (2d Cir. 2006) ("[T]o the extent that [plaintiff] brings a state-

law disability-discrimination claim, it survives or fails on the same basis as his ADA claim.")); *Daley v. Cablevision Sys. Corp.*, No. 12-cv-6316, 2016 WL 880203, at *4, n. 2 (S.D.N.Y. Mar. 7, 2016).   Accordingly, the Court analyzes both claims under the same framework.   To establish a *prima facie* case of disability discrimination, a plaintiff must show: (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability as defined within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) due to the disability, the employee suffered an adverse employment action.   *See Giordano v. City of N.Y.*, 274 F.3d 740, 747 (2d Cir. 2001).   Once a *prima facie* case is established, "[t]he burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action." *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (internal citations omitted).   "Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the *prima facie* case, without more." *Id.*

Applying these standards, Defendants have sufficiently established a meritorious defense in the form of a non-discriminatory reason for Plaintiff's

termination.  Specifically, Jonathan Turman testified that Plaintiff was terminated, not because of her disability, but because of her lack of communication and uncertainty as to whether she would return to work.  *See* Hearing Tr.  at 182:8-183:10. In opposition, Plaintiff argues that Turman's testimony is incredible as he replied to an email where Bergman discussed:  (1) discrepancies in her pay; (2) requested two additional months of leave; and (3) stated that she would provide an exact date of return as soon as possible.   However, the Court finds that Jonathan Turman's testimony, that he did not read that portion of the email addressing her potential return to work, credible.  Specifically, Mr. Turman, who is legally blind, testified that he reads email with the help of an adaptive visual display, which omitted the latter portion of the email concerning Plaintiff's return date when he read it.  *See* Hearing Tr. at 189:  Turman's reply to the email, which only addresses the discrepancy in pay, also fails to indicate an awareness of Bergman's comments regarding her leave. Considering the above, it is plausible that Mr. Turman was unaware of this specific attempt by Plaintiff to communicate a possible return from leave, and the jury would be free to credit this testimony at trial, which would establish a meritorious defense to Plaintiff's claims.

## 2.  Failure to Accommodate under the ADA and NYHRL

Plaintiff also alleges that Defendants failed to accommodate her disability in violation of the ADA and NYHRL.  *See* Compl. ¶¶ 31, 42.  In analyzing a failure to accommodate claim, the NYHRL analysis again parallels that of the ADA.  *See Picinich v. United Parcel Serv.,* 321 F. Supp. 2d 485, 499, n.14 (N.D.N.Y. 2004) (citing

15

*Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212, n. 3 (2d Cir.2001)).  The Court will thus apply the ADA analysis under both statutes.  Under the statute, the term "discriminate" is defined, in part, as: "[n]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual . . . ."  42 U.S.C. § 12112(b)(5)(A); *see also* N.Y. Exec. Law § 296(3)(a) ("It shall be an unlawful discriminatory practice for an employer . . ., to refuse to provide reasonable accommodations to the known disabilities of an employee . . . .").  To establish a *prima facie* failure to accommodate claim, Plaintiff must demonstrate that: "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013).  The federal regulations implementing the ADA require that both the employee and the employer engage in an "interactive process" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. § 1630.2(o)(3).  Participation in this interactive process is required to sustain a failure to accommodate claim under both the ADA and the NYHRL.  Noel v. BNY-Mellon Corp., 514 F. App'x 9, 10 (2d Cir. 2013); *see also Romanello v. Intesa Sanpaolo S.p.A.*, 97 A.D.3d 449, 949 N.Y.S.2d 345 (1st Dep't 2012).

Applying this standard, Defendants adequately claim that Plaintiff failed to engage in the interactive process described above.  Specifically, according to the

Individual Defendants, Bergman was completely unresponsive and failed to return various overtures regarding her status and potential return date. *See* Hearing Tr. at 182:8-183:10. As a result, a reasonable jury could find that Plaintiff abandoned this interactive process, and therefore, could not recover on her claim for a failure to accommodate. Accordingly, the Court finds that Defendants have adequately set forth a meritorious defense to Plaintiff's ADA and NYHRL failure to accommodate claims.

### 3. Unpaid Wages under the FLSA and NYLL

Plaintiff further alleges that Defendants failed to compensate her for work during her unpaid medical leave in violation of the FLSA and NYLL. *See* Compl. ¶ 48, 50. The FLSA "imposes numerous 'wage and hour' requirements, including establishing a minimum wage . . . ." *D'Arpa v. Runway Towing Corp.*, 12-cv-1120, 2013 WL 3010810, at *3 (E.D.N.Y. June 18, 2013) (quotations omitted). Initially, the FLSA requires that "every employer shall pay to each of his employees who in any workweek is engaged in commerce . . . [the minimum wage]." 29 U.S.C. § 206(a). Before an employer can be held liable under the FLSA, the employee must first establish that he or she is "covered" by the FLSA. *Gonzales v. Gan Israel Pre-Sch.*, No. 12-cv-06304, 2014 WL 1011070, at *5 (E.D.N.Y. Mar. 14, 2014). There are two types of coverage under the FLSA. The first is "individual coverage," where the employee is personally engaged in interstate commerce or in the production of goods for interstate commerce. *See* 29 U.S.C. § 206(a); *Gonzales*, 2014 WL 1011070, at *5. The second is "enterprise coverage" where the employee is employed in an enterprise

engaged in interstate commerce. *See* 29 U.S.C. § 206(a); *Gonzales*, 2014 WL 1011070, at *5.

Under the NYLL, every "employer shall pay to each of its employees for each hour worked a wage of not less than" the minimum wage. N.Y. Lab. Law § 652(1). An employee is defined as "any individual employed or permitted to work by an employer in any occupation . . . ." N.Y. Lab. Law § 651(5). An employer is "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." N.Y. Lab. Law § 651(6). Unlike the FLSA, the NYLL does not require that the plaintiff show a nexus with interstate commerce. *Chun Jie Yin v. Kim*, No. 07-cv- 1236, 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008).

Initially, consistent with the Court's previous Report and Recommendation, Plaintiff has failed to allege sufficient facts demonstrating that she is a covered employee under the FLSA. *Bergman*, 2016 WL 4991549, at *2. Specifically, testimony is devoid of facts illustrating any nexus between Defendants and interstate commerce. As a result, the Court finds that Defendants have a meritorious claim against Plaintiff's FLSA claims.

Further the Court finds that Defendants have established a meritorious defense as to Plaintiff's NYLL claims. As discussed above, Defendants have repeatedly stated that Plaintiff: (1) failed to communicate during her paid leave; (2) was not required to work; and (3) did not perform any work entitling her to compensation. *See* Hearing Tr. at 155:12-18. As a result, Defendants assert that

Case 2:14-cv-05005-DRH-SIL   Document 55   Filed 02/16/18   Page 19 of 24 PageID #: 1177

Bergman is not owed any compensation. While Plaintiff asserts that she occasionally completed work, in form of phone calls, without pay during her medical leave, such activities may fall under a *de minimis* exception under the NYLL. *See Perez v. G & P Auto Wash Inc.*, 930 F. Supp. 2d 423, 432 (E.D.N.Y. 2013) (discussing the de minimis exception under the FLSA and NYLL). Accordingly, Defendants also plausibly assert meritorious defense as to Plaintiff's NYLL claims.

### 4. Retaliation FLSA and NYLL

Plaintiff further alleges that she was retaliated against in violation of the FLSA after she complained about unpaid, accrued vacation days.[4] *See* Compl. ¶ 52. Under the FLSA, it is unlawful for any "person" to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . related to this chapter . . . ." 29 U.S.C.A. § 215(a)(3). To state a claim for retaliation under the FLSA, a plaintiff must allege: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected

---

[4] Some circuits have held that, even if a minimum wage claim fails under the FLSA due to a lack of nexus with interstate commerce, a plaintiff can still pursue a retaliation claim under the FLSA. *See, e.g.*, *Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999); *Wirtz v. Ross Packaging Co.*, 367 F.2d 549, 551 (5th Cir. 1966). In *Sapperstein*, the Seventh Circuit found that the retaliation portion of the statute applied to any "person" and not only an "employer." *Sapperstein*, 188 F.3d at 857. The Second Circuit has not resolved the issue and the District Courts to discuss the question are split. *Compare Lamont v. Frank Soup Bowl, Inc.*, No. 99-cv-12482, 2001 WL 521815, at *5 (S.D.N.Y. May 16, 2001) ("The Congressional findings and statement of policy of the FLSA illustrate that Congress intended to reach only those employees engaged in interstate commerce or the production of goods for interstate commerce . . . .") *with Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345, n. 8. (E.D.N.Y. 2014) (declining to follow *Lamont* in light of the "weight of the district court authority treating the question of enterprise coverage as an element of a plaintiff's claim" on its merits). This Court agrees with the Seventh and Fifth circuits and will review the FLSA retaliation claim.

19

activity and the adverse employment action." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010).   Regarding the first prong, Section 215(a)(3) "does not restrict its protections to employees who file formal, written complaints with government agencies." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015).

Plaintiff similarly alleges retaliation under the NYLL. *See* Compl. ¶ 54.  Under New York's anti-retaliation statute, "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer . . . ." N.Y. Lab. Law § 215(1).  To establish a retaliation cause of action under the NYLL, the same three factors analyzed under the FLSA are applied. *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013).

Here, just as in the Court's previous Report and Recommendation, Plaintiff is not alleging retaliation for participation in a protected activity under the FLSA or NYLL.  *Bergman*, 2016 WL 4991549, at *2; *see also Arjumand v. Laguardia Associates, L.P.*, No. 14-cv-4618, 2015 WL 1470470, at *5 (E.D.N.Y. Mar. 30, 2015) ("Under FLSA, [e]mployees do not have a statutory entitlement to accrued vacation pay.") (quoting *Isaacs v. Cent. Parking Sys. of N.Y., Inc.*, No. 10-cv-5636, 2012 WL 957494, at *6 (E.D.N.Y. Feb. 27, 2012));  *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 476 (E.D.N.Y. 2011) ("[Section 198-c(1)] codifies the general understanding that vacation and sick pay are purely matters of contract between an employer and employee.").   Further, Defendants have sufficiently argued that

20

Bergman was terminated for failing to request an extension of her initial six-week medical leave and for failing to otherwise respond and/or communicate while she was out on leave, and not in retaliation for her complaints regarding unpaid compensation.  As a result, the Court finds that Defendants have a meritorious defense as to Plaintiff's FLSA and NYLL retaliation claims.

### 5.  FMLA Retaliation and Interference Claims

Finally, Plaintiff alleges retaliation and interference under the FMLA.  The FMLA prohibits an employer from "discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice" under the FMLA.  29 C.F.R. § 825.220(a)(2); 29 U.S.C. § 2615(b).  To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must establish that: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016) (internal citations omitted).

In addition, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).  In order to succeed on an interference claim under the FMLA, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her

intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio*, 817 F.3d at 424.

However, the FMLA provides "no greater job security than that to which the employee would have been entitled to prior to taking leave." *Hale v. Mann*, 219 F.3d 61, 66 (2d Cir. 2000). "The law is clear that an employee may be terminated while on medical leave, as long as the taking of the FMLA leave was not the cause for the termination." *Geromanos v Columbia Univ.*, 322 F Supp 2d 420, 428 (S.D.N.Y. 2004); Specifically, the FMLA does not prevent termination where the party identifies "a nonpretextual reason for his removal based on events which occurred prior to his going on leave." *Hale*, 219 F.3d at 66.

Here, as set forth above, Defendants have identified a nonpretextual reason for Bergman's termination. Defendants argue that Plaintiff was terminated because she failed to return their calls and/or update them as to her medical status or anticipated return to work for over two months, and they testified expressly that Plaintiff's medical leave was not the basis for the termination decision. *See* Hearing Tr. 153:28-154:14, 157:5-160:12, 183:6-10. Accordingly, the Court finds that Defendants have also set forth a meritorious defense as to Bergman's FMLA retaliation and interference claims.

### iii.    Prejudice

Finally, the Court concludes that granting Defendants' motion would not prejudice Plaintiff. It is well-established that "[d]elay alone does not establish prejudice." *Enron Oil Corp.*, 10 F.3d at 98. Rather, a plaintiff must demonstrate

"that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation omitted); *see also Ward v. Ramkalawan*, No. 11-CV-4295, 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013) ("Prejudice results when delay causes the loss of evidence, create[s] increased difficulties of discovery or provide[s] greater opportunity for fraud and collusion."). Moreover, "costs incurred with respect to countering a defendant's motion to vacate do not constitute prejudice." *Gesualdi v. Gayle Bard Landscapes, Inc.*, No. 10-CV-5762, 2011 WL 2457882, at *3 (E.D.N.Y. May 31, 2011) (Report and Recommendation), *adopted by* 2011 WL 2432936 (E.D.N.Y. June 16, 2011); *see also Pennacchio*, 2010 WL 3767141, at *4 ("Litigation costs, however, are insufficient evidence of prejudice in this context . . . . ").

Here, Defendants have satisfied their burden in demonstrating that Plaintiff will not be prejudiced by this delay in responding the Complaint. While Bergman generally complains that it is possible that the delay has resulted in the loss of evidence relevant to this action, she fails to specifically identify what documents or records are purportedly unavailable. Further, there is little indication that the delay has prejudiced Bergman with an increased difficulty in procuring discovery as, in opposition to the current motion, she has been able to acquire affidavits from Defendants' employees and text messages and emails from the Individual Defendants. Therefore, the Court concludes that Plaintiff will not be prejudiced by Defendants' delay in responding to the Complaint. Based on the foregoing, the Court

concludes that:   (1) Defendants did not act willfully in failing to respond:
(2) Defendants have meritorious defenses; and (3) that Plaintiff will not be prejudiced
by Defendants' delay.   Accordingly, the Court recommends that the motion to vacate
the default judgment be granted.

## IV.   Conclusion

For the reasons set forth above, the Court respectfully recommends that
Defendants' motion to vacate the default judgment be granted.

## V.   Objections

A copy of this Report and Recommendation is being served on all parties by
electronic filing on the date below.   Any objections to this Report and
Recommendation must be filed with the Clerk of the Court within fourteen (14) days
of receipt of this report.   Failure to file objections within the specified time waives the
right to appeal the District Court's order.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir.  Nov. 20,
2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*,
84 F.3d 52, 60 (2d Cir. 1996)

Dated:      Central Islip, New York
            February 16, 2018

                                             s/ Steven I. Locke
                                             STEVEN I. LOCKE
                                             United States Magistrate Judge